# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1104

**DR. STEVEN M. HORTON, ET UX.**

**VERSUS**

**ANPAC LOUISIANA INSURANCE COMPANY**

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 86,372-A
HONORABLE ERIC ROGER HARRINGTON, DISTRICT JUDGE

**********

## DAVID KENT SAVOIE
## JUDGE

**********

Court composed of Marc T. Amy, John E. Conery, and David Kent Savoie, Judges.

**AFFIRMED.**

**Edwin Dunahoe, Jr.**
**Dunahoe Law Firm**
**402 Second Street**
**Post Office Box 607**
**Natchitoches, LA 71458-0607**
**(318) 352-1999**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
> **Dr. Steven M. Horton**
> **Emilyn Horton**

**Paul M. Lafleur**
**Stafford, Stewart & Potter**
**Post Office Box 1711**
**Alexandria, LA 71309**
**(318) 487-4910**
**COUNSEL FOR DEFENDANT/APPELLEE:**
> **ANPAC Louisiana Insurance Company**

**SAVOIE, Judge.**

In this insurance coverage dispute, the Plaintiffs seek review of a summary judgment finding that the uninsured/underinsured motorist coverage provisions in their policy did not provide coverage for an alleged reduction in market value of the Plaintiffs' vehicle resulting from an auto accident with an uninsured driver, and dismissing their claims. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

The parties submit that on June 6, 2013, an automobile accident occurred wherein a 2013 Volvo owned by Dr. and Mrs. Horton was struck by an uninsured motorist. The Hortons allege that, as a result of the accident, their vehicle sustained physical damage, as well as a reduction in market value.

ANPAC Louisiana Insurance Company (ANPAC) issued a "Louisiana Automobile Policy" applicable to the Hortons' vehicle. It is undisputed that ANPAC paid for the physical damages to the Hortons' vehicle sustained in the accident pursuant to the collision coverage in the policy. ANPAC, however, refused to provide coverage for the vehicle's alleged reduction in market value. Therefore, the Hortons filed suit against ANPAC, seeking damages for reduction in market value under the uninsured/underinsured motorist provisions of the policy, as well as penalties and attorney fees for failure to timely pay these damages.

The pertinent uninsured/underinsured motorist coverage provisions of the policy state as follows:

**PART IV-UNINSURED/UNDERINSURED MOTORIST**

COVERAGE J – UNINSURED/UNDERINSURED MOTORIST COVERAGE

We will pay damages which an insured person is legally entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury caused by

accident and resulting from the ownership, maintenance, or use of the uninsured or underinsured motor vehicle. **We will also pay damages which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of property damage caused by accident and resulting from the ownership, maintenance or use of an uninsured motor vehicle**.

Uninsured Motorist Property Damage is subject to a $250 deductible per accident.

The liability of the owner or operator of the uninsured or underinsured motor vehicle must result from the ownership, maintenance, or use of the vehicle. **We will pay under each coverage only if a premium is shown for the respective coverage in the Declarations** …
(emphasis added).

The applicable declarations page shows a premium in the heading labeled "UNINSURED & UNDERINSURED MOTORIST[,]" and the line directly underneath, labeled "LIMIT PER PERSON/ACCIDENT[,]" states "250,000/500,000."

In addition, the Hortons' insurance application reflects a premium, and a $250,000 per person, $500,000 per accident limit in the line labeled "UNINSURED/UNDERINSURED MOTORIST BI[.]" The line labeled "UNINSURED MOTORIST PD" is blank.

The parties filed cross motions for summary judgment seeking a determination as to whether the uninsured/underinsured motorist provisions provide coverage for reduction in market value. The trial judge granted summary judgment in favor of ANPAC and dismissed the Hortons' claims, finding the uninsured/underinsured motorist provisions did not provide property damage coverage to the Hortons, and, therefore, did not cover the alleged reduction in market value.

## LAW AND ANALYSIS

We review summary judgments as follows:

Courts of appeal review summary judgments de novo applying the same analysis as the trial court. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Article 966 provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Hardy v. Bowie*, 98–2821 (La. 9/8/99), 744 So.2d 606.

*Berard v. Home State County Mut. Ins. Co.*, 11-1372, p. 2 (La.App. 3 Cir. 5/9/12), 89 So.3d 470, 471-472.

Interpretation of insurance policies is governed by the following principles:

An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.

Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion.
. . .

Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations.
. . .

If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the

3

policy's provisions are couched in unambiguous terms. The determination of whether a contract is clear or ambiguous is a question of law.

*Cadwallader v. Allstate Ins. Co.*, 02-1637, pp. 3-4 (La. 6/27/03), 848 So.2d 577, 580 (citations omitted).

The Hortons argue on appeal that the uninsured/underinsured motorist provisions of their policy entitle them to coverage for property damage, including reduction of market value, resulting from an uninsured driver. They submit that coverage for both bodily injury and property damage is automatically available under the uninsured/underinsured motorist provisions, provided that the insured purchases uninsured/underinsured motorist coverage, and that a separate premium for uninsured/underinsured property damage coverage is not required. We disagree.

The uninsured/underinsured motorist provisions are provided in the policy under "Part IV - Uninsured/Underinsured Motorist". Thereunder, "Coverage J – Uninsured/Underinsured Motorist Coverage" provides that the insurer will pay for damages for both bodily injury and property damage "to which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle[,]" as those terms are defined in the policy. Coverage J then states that the insurer "will pay under each coverage only if a premium is shown for the respective coverage in the Declarations."

Reference to "each" coverage indicates there is more than one coverage available under Coverage J (i.e. coverage for damages for "bodily injury" and "property damage" as described therein). Coverage J also clearly requires a premium for each "respective" coverage available under Coverage J. Consequently, the policy affords property damage coverage under "Coverage J – Uninsured/ Underinsured Motorist Coverage" only if the declarations page reflects a premium

4

for that coverage. Therefore, it is necessary to determine if the declarations page reflects a premium for property damage coverage described under Coverage J.

The declarations page reflects a premium in the line labeled "uninsured and underinsured motorist." This line-heading is consistent with the title of Part IV and Coverage J. However, the declarations page provides only one limit applicable to this coverage, which is stated as "limit per person/accident[,]" in the amount of "250,000/500,000". No applicable deductible is stated.

The per person/accident limit described in the declarations is clearly the limit for coverage for bodily injury provided under Coverage J. The section of Part IV – Uninsured/Underinsured Motorist of the policy labeled "Limits of Liability" states that "subject to the **bodily injury** liability limits for "each person[,]" the **bodily injury** liability limit for "each occurrence" is the maximum **we** will pay as damages for **bodily injury** to two or more persons in one accident." The limit applicable to uninsured/underinsured property damage coverage under Coverage J is not "subject to" a per person limit, but rather would be stated as a per accident limit.

Because the declarations page does not provide a limit for uninsured/underinsured property damage coverage, the premium shown for uninsured/underinsured motorist coverage does not include property damage coverage. Therefore, the policy does not provide coverage for property damage, including reduction in market value, under the uninsured/underinsured motorist provisions.[1]

---

[1] Since the policy does not provide property damage coverage under the uninsured/underinsured motorist provisions, we do not consider whether the policy's definition of "property damage" includes a reduction of a vehicle's market value.

While we believe the uninsured/underinsured provisions unambiguously do not afford property damage coverage to the Hortons, we note that our finding is consistent with the Hortons' insurance application. While the application shows a premium and $250,000/$500,000 limit for uninsured/underinsured bodily injury coverage, the line for any applicable premium and limit for uninsured/underinsured motorist property damage coverage is blank.

The Hortons suggest that, because the declarations page reflects a premium in the line labeled "uninsured and uninsured motorist coverage[,]" they paid for and are entitled to both property damage and bodily injury coverage described in the uninsured/underinsured motorist provisions. However, this interpretation would lead to the unreasonable result of uninsured/underinsured property damage coverage that is not subject to a coverage limit, since the declarations page does not provide a limit for that coverage.

In addition, interpreting the policy to subject both uninsured/underinsured bodily injury and property damage coverage to the $250,000/$500,000 "per person/accident" limit, which is the only limit provided for uninsured/underinsured motorist coverage, would effectively reduce the uninsured/underinsured bodily injury coverage by the amount of any property damage. This interpretation could also lead to an unreasonable result. It would potentially render the uninsured/underinsured motorist provisions insufficient under La.R.S. 22:1295(1)(a)(i) [2] by reducing the statutorily required limit for uninsured/

---

[2] Louisiana Revised Statutes 22:1295(1)(a)(i) provides in pertinent part:

> No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less

underinsured coverage for "bodily injury, sickness, or disease, including death therefrom" to less than "the limits of bodily injury provided by the policy[,]" without the requisite form selecting a lower limit.

## CONCLUSION

The policy at issue affords property damage coverage under the uninsured/underinsured motorist provisions only if a premium for that coverage is shown in the declarations page. Because the declarations page does not show a premium for uninsured/underinsured property damage coverage, the Hortons are not entitled to coverage for property damage, including reduction in market value, under the uninsured/underinsured motorist policy provisions.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assessed to Appellants, Dr. Steven M. Horton and Emilyn Horton.

**AFFIRMED.**

---

than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section."